The motion to disolve [dissolve] was made upon the coming in of the answer, and was considered upon the bill, answer and exhibits filed, the substance of which is sufficiently set forth in the following opinion of the Court delivered by the Chief Justice. *Page 158 
The bill charges that the plaintiff and Samuel A. Lyle jointly undertook and did erect a certain public building in the State of Georgia, in the County of Lumpkin, for and at the price of $6850, and for additional work they were to be paid the additional sum of $1720: that the Inferior Court of the said County had full power to make such a contract, but their power, as to taxation to raise the necessary funds, is limited: The bill further alleges that, upon the completion of the work, the plaintiff and S. A. Lyle had a settlement, when it was ascertained, upon an adjustment of their accounts, that the sum due the latter was $4319, for which the plaintiff gave his bond, absolute upon its face, but that it was agreed, by a written paper executed by the said S. A. Lyle at the same time, that it was to be paid when received from the County of Lumpkin. This bond and the agreement were dated on the 8th day of September, 1841. The bill then charges, that the Inferior Court of Lumpkin County, though frequently applied to, refused to pay for the building erected, upon the ground that their authority to levy taxes is, by law, limited, and that they have gone to the limit of their power in that respect, and that plaintiff has been advised that he cannot compel payment from the Court.
S. A. Lyle is dead, and the defendant, John Lyle, is his duly appointed administrator, and has endorsed this bond to the other (190) defendant, R. C. Pearson for the purpose of enabling the latter to sue in this State, and accordingly an action was brought against him on this bond, to the Spring Term, 1850, of Burke Superior Court, and judgment obtained against him for the sum of $6,988.63.
The prayer is for an Injunction and for general relief.
The answer of the defendant Llye states, that, of his own knowledge, he knows nothing of the contract between plaintiff and his intestate, but that he has understood and believes that the contract for erecting the building in Lumpkin was made by the plaintiff on his own account; that his intestate was employed by him to do the masonry and was not a partner in the contract; that at the time of the settlement in 1841 between the parties, the plaintiff gave his bond to the intestate for the sum that was due him for his portion of the work, and the intestate, at the same time, executed the paper set forth in the bill. The answer further alleges that the complainant and S. A. Lyle did make a joint contract with commissioners, duly appointed for that purpose, for building a court-house and jail in Lenoir, and a similar contract to build a house in the same place for William Davenport, and that he is informed *Page 159 
and believes that the complainant has not used due diligence in collecting his claim in Georgia; that he might, by a writ of mandamus, have enforced the collection of what was due from the County of Lumpkin. It admits the obtaining the judgment, and avers that all the payments which have been made, either to him or his intestate, are properly credited on the bond, and allowed in taking the judgment. Injunction was continued to the hearing, and the defendant appealed.
The sole ground upon which the plaintiff can rest his application for relief, is, that he and the intestate, Samuel A. Lyle, were jointly concerned in the contract made for the building of the jail in Lumpkin County. If they were so jointly concerned, the defendant ought not to be permitted to force the money out of the plaintiff until he had collected it; upon no principles of equity would it be allowed. The answer, as far as it can, denies that such was the fact, and the statements (191) of the bill strongly sustain it. When the work was completed, the parties had a final settlement, and the plaintiff gave to defendant's intestate his bond to pay him the sum mentioned to be due him. It may be asked, if they were joint contractors to the work, then the County of Lumpkin owed to the intestate what was due him and not the plaintiff, and how came the plaintiff to give his bond, thereby acknowledging that he owed the money? That could not be, unless he had received it, which is not pretended, nor does the memorandum or paper, executed by the defendant, alter the case; the language of the paper is, "it was agreed that Samuel A. Lyle would receive the money due him from said Clayton as he collected it from Lumpkin Co., Georgia, provided he uses the lawful means to collect the money without delay." Now this very paper, which is produced by the plaintiff, says expressly that the money was due the intestate from the plaintiff: so far from showing that the intestate was a joint contractor with the plaintiff, it is strong evidence to the contrary.
But further: though the bill charges a partnership in the work, it says not one word as to the terms. Again, as to the memorandum; it only says to the plaintiff, "if you will, without delay use lawful means to collect what is due you, I will not press you for the money;" but it no where says, or intimates, if Clayton could not get it out of the County, that the intestate was to lose his money. No such thing. "I will receive my money as you receive it, provided you use the proper means." The only effect of the paper was to give the plaintiff a reasonable time to collect the money due him. He has waited ten years, the bond is dated September, 1841, and the bill is filed September, 1851. But the very ground upon which the delay was granted is taken away by the bill; it states that the County of Lumpkin has refused to pay, *Page 160 
and that he is advised that they cannot be compelled. Why wait any longer? But further than this: the answer sets forth that several other building contracts were made between the intestate and the (192) complainant, and were so expressed; why was not this contract so expressed, if such was the fact?
Upon the whole, we consider the answer of the defendant Lyle as fully responsive to the bill, and that it answers its equity. The answer of Pearson is merely formal.
Per curiam.
The interlocutory order of the Court below is erroneous, and, therefore, reversed.
The bill was continued over in the Court below as an original bill; replication was made to the answer, and proofs taken. The cause was set down for hearing, and sent to this Court again by consent. The substance of the evidence is recited in the opinion of the Court.
Same counsel as before.